UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
BETH HOEFFNER, :
               Plaintiff, :
                                                    : **OPINION AND ORDER**
v. :
                                                    : 17 CV 9344 (VB)
COUNTY OF ORANGE, :
               Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Beth Hoeffner brings this action against defendant the County of Orange (the "County"), alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 et seq., in connection with her employment as a Public Health Educator in the County's Department of Health (the "Department").

      Now pending is the County's motion for summary judgment. (Doc. #43).

      For the following reasons, the motion is GRANTED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

      The parties have submitted briefs, declarations with exhibits, and statements of material fact pursuant to Local Civil Rule 56.1, which together reflect the following factual background.

      Plaintiff has worked for the County since 2007 as a Public Health Educator in the Community Health Outreach Division (the "Division"). As a Public Health Educator, plaintiff's responsibilities include supervising assigned workers, coordinating and scheduling daily activities, and evaluating program staff—in particular, Community Health Outreach Workers assigned to specific locations or grant-funded programs.

1

Throughout her employment, plaintiff was supervised directly by Maureen Sailer, and indirectly by Bob Dietrich, the Division Director. Beginning in 2013, Chris Ericson, the Deputy Commissioner of the Department, also indirectly supervised plaintiff.

The Division has had offices in Middletown, Newburgh, and Port Jervis, New York. The 130 Broadway building in Newburgh supports the largest concentration of Division employees. According to defendant, the County did not own or manage these buildings. Further, defendant asserts that it was the landlord's obligation to maintain the building at 130 Broadway; that is, to provide heating, air-conditioning, and other ventilation.

I. <u>Middletown Placement</u>

When plaintiff first started working for the County, she worked in the Middletown office at 47 Academy Avenue. She worked in that office from 2007 until 2010. During this time, plaintiff performed duties under the "Tobacco Free Schools" grant, which terminated in 2010.

Plaintiff does not recall having any allergic reactions or asthma attacks while she was working in the Middletown building.

II. <u>Reassignment to 130 Broadway</u>

In 2010, plaintiff was reassigned to work at the 130 Broadway building in Newburgh to administer the "Healthy Neighborhoods" and "Childhood Lead Primary Prevention" programs.

Plaintiff testified she began experiencing asthmatic symptoms shortly after moving to her new office at 130 Broadway. Plaintiff's symptoms worsened in October 2014, as employees prepared to and eventually moved offices within the building. Between October 2014 and January 2015, plaintiff had nineteen asthma attacks.

Plaintiff testified she had asthmatic reactions only in the building at 130 Broadway, and she further testified that after she would exit the building, her symptoms would subside.

However, plaintiff maintains that as a result of spending time at 130 Broadway, her breathing was also affected at home.

III.   2014–2015 Accommodations

   A.   Room Transfer in 130 Broadway

Sometime between October 2014 and January 2015, plaintiff requested, and was given, transfers to different rooms within 130 Broadway. During this time, plaintiff took medicine to control her asthmatic symptoms and wore a face mask. Deitrich, Ericson, and Sailer were aware of plaintiff's complaints, and therefore permitted plaintiff to work in the conference room or other rooms that did not trigger her condition.

On December 12 and 14, 2014, plaintiff emailed Sailer and Deitrich concerning her symptoms and informed them that she had exhausted most of her vacation time due to asthma-related absences. According to plaintiff, neither Sailer nor Deitrich responded to the emails.

   B.   FMLA Leave in 2015

In January 2015, plaintiff requested, and was given, a Family Medical Leave Act ("FMLA") absence.[1] As a result, plaintiff was placed on unpaid leave from January 8, 2015, to May 3, 2015. During this time, plaintiff lost leave time and wages, and she paid out-of-pocket for medical benefits. Plaintiff testified that while on FMLA leave, she did not have any asthma attacks. Further, plaintiff testified that during this time she did not have to take medication.

While on FMLA leave, plaintiff requested, upon return to work, an office transfer to a building in which she did not suffer asthma attacks. On February 13, 2015, plaintiff wrote to Ericson with a doctor's note, requesting to be relocated to 141 Broadway, in Newburgh. Ericson

---

[1]   Plaintiff's FMLA leave was not approved until mid-March 2015.

responded on February 17, 2015, stating that he and Human Resources ("HR") would look into plaintiff's request.

The parties dispute whether Ericson took action to find plaintiff an alternative office in a different building. According to defendant, Ericson, Deitrich, and Sailer met several times with HR to discuss relocating plaintiff.

Plaintiff was invited to a meeting with HR on February 24, 2015, to discuss her requests for accommodation. However, on advice of counsel, plaintiff did not attend the meeting. On March 20, 2015, Ericson wrote plaintiff with a status update concerning her request for a reasonable accommodation. (See Doc. #54 ("Sussman Aff.") Ex. 13 ("We did receive your latest letter from the physician. The county is still reviewing your request for reasonable accommodations")).

C.   Return to Work at 141 Broadway

Plaintiff received notice on April 24, 2015, that she was being relocated to 141 Broadway. (See Doc. #44 ("Worthy-Spiegl Decl.") Ex. J). Plaintiff met with Ericson, Deitrich, and Sailer to discuss her relocation. As part of plaintiff's relocation, she was still required to attend meetings at 130 Broadway for one to two hours each day. Plaintiff was also required to maintain her program supplies and specialty materials at 130 Broadway. The terms of the accommodation were memorialized in writing. (See Sussman Aff. Ex. 16).

Plaintiff returned to work on May 4, 2015, to her new office at 141 Broadway. Despite the relocation, plaintiff continued to have asthma attacks.

On May 21, 2015, plaintiff and Ericson emailed respecting an upcoming meeting. In their correspondence, plaintiff explained her limitations about attending a meeting at 130

Broadway. Ericson responded, "[p]articipate how you feel you can, but obviously at some point, you will need to be part of the conversations and meet with the state." (Sussman Aff. Ex. 18).

Plaintiff testified that in July 2015, she complained to her supervisors about respiratory difficulties as she shuttled between offices at 130 and 141 Broadway. Her supervisors testified that as a result, they looked into other roles for plaintiff in a building in Goshen, New York. However, plaintiff did not meet the qualifications, and therefore, they could not offer this transfer.

IV.  2016–2017 Administrative Leave

Ericson wrote to plaintiff at the end of March 2016, indicating she was not in compliance with the terms of the accommodation they had agreed to in April 2015.

On April 1, 2016, plaintiff told Ericson that, on doctor's orders, she could no longer work inside 130 or 141 Broadway, and she turned in her swipe card and badge. Accordingly, Ericson placed plaintiff on fully paid administrative leave beginning April 6, 2016, and plaintiff remained on administrative leave to February 26, 2017. During that period, plaintiff earned a salary and accrued vacation, sick, and personal time. Plaintiff testified her asthma symptoms subsided during this time.

While on administrative leave, plaintiff was required to submit to an independent medical examination ("IME"). On May 13, 2016, the County scheduled plaintiff for an IME. The IME determined that plaintiff was "fit to perform the duties of [her] position, however must avoid exposures to mold." (Sussman Aff. Ex. 26). Further, the letter informing plaintiff of the IME's determination instructed plaintiff to "contact the office of Christopher Ericson, Deputy Commissioner of Health to meet regarding your possible return to duty with a reasonable accommodation." (Id.).

5

Plaintiff and her union representative met with Ericson on July 13, 2016, to discuss other possible work locations. Plaintiff requested placement at any of four non-County-owned buildings in Newburgh, but this request was denied. The County supervisors testified plaintiff could not be accommodated in those buildings because they did not house any Division employees. Plaintiff testified that there was no material difference between her placement at 141 Broadway and the other non-County locations in Newburgh, as she was already shuttling between locations.

On July 29, 2016, Ericson advised plaintiff that the County could not provide the relocation she requested and noted that it had previously made "three good faith efforts" to relocate plaintiff. (Sussman Aff. Ex. 28). Accordingly, the County indicated via letter that it placed plaintiff on yet another medical leave of absence, beginning August 1, 2016. However, plaintiff insisted she was "ready, willing and able to work." (Sussman Aff. Ex. 30).

Plaintiff requested a hearing to contest the County's decision to place her on leave rather than provide her requested accommodation in a "safe working environment." (Sussman Aff. Ex. 30). On September 13, 2016, Ericson wrote back to plaintiff and her counsel, stating that an independent hearing would take place on a forthcoming date. Ericson testified that he did not know whether a hearing took place (see Sussman Aff. Ex. 1 ("Ericson Dep.") at 105–06), and plaintiff claims one never did.

V.    2017 Return to Work

An indoor air quality and mold investigation report of 130 Broadway was conducted on September 26, 2016. Following the report and its indication that there was no visible mold present, on February 27, 2017, plaintiff returned to work at 130 Broadway, in a different office. There, plaintiff was provided an air purifier, allowed to close her door, and excused from certain

meetings outside her office. Plaintiff's asthma subsided at the end of the day and on weekends; however, plaintiff maintains that she still experienced asthma symptoms while working at 130 Broadway.

VI. <u>Transfer to Port Jervis</u>

Plaintiff met with Ericson and Dietrich in June 2017 to discuss relocating to an office at 150 Pike Street, in Port Jervis, New York. At the time, there were no vacant positions for a Public Health Educator in the Port Jervis office, and there had never been a Public Health Educator in that office.

On July 3, 2017, the County relocated plaintiff to the Port Jervis office. To do so, the County transferred one employee working in Port Jervis to another location. As a result of plaintiff's relocation, her responsibilities changed; she no longer managed the six employees she had previously supervised. Accordingly, Sailer, plaintiff's direct supervisor, assumed plaintiff's supervisory responsibilities over the employees in the Newburgh and Middletown locations. However, plaintiff maintains she has taken on extra responsibilities respecting the "Childhood Lead Primary Prevention" program.

Ever since plaintiff's transfer to the Port Jervis office, she has not entered 130 Broadway, nor has she suffered from an asthma attack.

**DISCUSSION**

I. <u>Legal Standard</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

7

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a

reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.     ADA Claim for Disability Discrimination

Defendant argues the undisputed facts show that plaintiff is not "disabled" within the meaning of the ADA, and that she did not suffer an actionable adverse employment action because of any disability.

The Court disagrees with respect to plaintiff's disability, but agrees plaintiff cannot, as a matter of law, establish an adverse employment action sufficient to make out a prima facie case of discrimination.

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to," among other things, the "discharge of employees." 42 U.S.C. § 12112(a). Disability discrimination claims are evaluated under the familiar burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009). The McDonnell Douglas analysis proceeds in three steps: "A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006). To establish a prima facie case,

>a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

Sista v. CDC Ixis N. Am., Inc., 445 F.3d at 169. Plaintiff need only make a de minimis showing to establish a prima facie case. Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).

If plaintiff establishes the first step, the employer then bears the burden of putting forth a legitimate, non-discriminatory reason for the employer's adverse employment action. McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d at 96.

At the third step, a plaintiff must present "sufficient admissible evidence from which a rational finder of fact could infer that more likely than not [plaintiff] was the victim of intentional discrimination." Bickerstaff v. Vassar Coll., 196 F.3d 435, 447 (2d Cir. 1999).

Here, defendant concedes it is subject to the ADA and that plaintiff was able to perform the essential functions of her job with or without reasonable accommodation. (See Doc. #49 ("Def. Mem.") at 6). However, defendant argues plaintiff was not disabled, and further, that she did not suffer an adverse employment action. (Id.).

    A.    Covered Disability

As to whether plaintiff is "disabled" within the meaning of the ADA, the Court finds there is a genuine dispute of material fact that precludes summary judgment on this point.

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADA Amendments Act of 2008 clarified that "major life activities" covered by the ADA "include, but are not limited to," "breathing" "and working." Id. § 12102(2)(A). Further, "[t]he determination of whether an

impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures," such as "medication, medical supplies, equipment, . . . oxygen therapy equipment and supplies" or "reasonable accommodations." Id. § 12102(4)(E)(i).

The regulations provide that the statutory language "'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i). Under the regulatory framework, an individual is disabled if the condition "limits the ability of [the] individual to perform a major life activity as compared to most people in the general population," but such determination still "requires an individualized assessment." Id. at §§ 1630.2(j)(1)(ii) & (iv). Indeed, a condition may be episodic or in remission, yet still considered a disability "if it would substantially limit a major life activity when active." Id. at § 1630.2(j)(1)(vii). Further, the regulation makes clear the language "'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard . . . applied prior to the [ADA Amendments]." Id. at § 1630.2(j)(1)(iv).

In support of its motion, defendant cites a number of Second Circuit and district court cases refusing to consider a plaintiff disabled due to asthma. (See Def. Mem. at 7–9). See e.g., Burke v. Niagara Mohawk Power Corp., 142 F. App'x 527, 529 (2d Cir. 2005) (amended summary order) ("[Plaintiff] has not shown that she was disabled within the meaning of the ADA. Although it is undisputed that [plaintiff] suffers from full-fledged asthma attacks, asthma does not invariably impair a major life activity."). However, defendant's case law predates the ADA Amendments Act of 2008, which added a broader definition of disability and no longer considers whether medication or other ameliorative measures can avoid episodes.

Indeed, in recent decisions, courts have noted that "[w]hether a plaintiff with asthma is substantially limited in his ability to work or to breathe is a fact specific question." Murtha v. New York State Gaming Comm'n, 2019 WL 4450687, at *10 (S.D.N.Y. Sept. 17, 2019) (denying in part a motion to dismiss). And although defendant relies on "cases where courts have found that asthma did not substantially limit a major life activity, the facts in those cases are dissimilar to the facts here." Moran v. Premier Educ. Grp., LP, 599 F. Supp. 2d 263, 274 (D. Conn. 2009).

Here, there is sufficient evidence upon which a reasonable juror could conclude that plaintiff's asthma was substantially limiting. Specifically, plaintiff testified that between October 2014 and January 2015—a period of three months—while working at 130 Broadway, she had nineteen asthma attacks. She took medication, used an inhaler and nebulizer, and wore a face mask. Further, even after her time at 130 Broadway was limited to two hours a day, plaintiff says she still experienced asthmatic symptoms.

Accordingly, although it is "far from clear, the Court assumes, without deciding, that plaintiff had a disability within the meaning of the ADA." See Flynn v. McCabe & Mack LLP, 2018 WL 794631, at *7 (S.D.N.Y. Feb. 8, 2018), appeal withdrawn, 2018 WL 4348054 (2d Cir. July 13, 2018).

    B.    Adverse Employment Action

Defendant's next argument is that, as a matter of law, plaintiff did not suffer an adverse employment action within the relevant time period.

The Court agrees.

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Kassner v. 2nd Ave. Delicatessen

Inc., 496 F.3d 229, 238 (2d Cir. 2007). Work assignments that do not result in a reduction in pay or benefits, unless the assignment "alters the terms and conditions of the plaintiff's employment in a materially negative way," are not considered adverse. Patrolmen's Benevolent Ass'n of New York v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002). "[S]ending plaintiff to undergo a . . . medical examination, even if inappropriate under the circumstances, does not constitute an 'adverse employment action' unless accompanied by a material change in the 'terms and conditions' of plaintiff's employment." Jackson v. City Univ. of New York, 2006 WL 1751247, at *4 (S.D.N.Y. June 23, 2006).

Moreover, it is well established that "[b]efore filing a[n] . . . ADA action in federal court, a plaintiff must timely file charges of employment discrimination with the EEOC." Thomson v. Odyssey House, 2015 WL 5561209, at *6 (E.D.N.Y. Sept. 21, 2015), aff'd, 652 Fed. App'x 44 (2d Cir. 2016) (summary order). "A federal employment discrimination claim is time-barred unless the plaintiff first files an EEOC charge within 180 days of the alleged discrimination, or within 300 days if the plaintiff had already filed a charge with the state or local employment agency." Id. (citing 42 U.S.C. § 2000e–5(e)(1)). Defendant acknowledges the 300-day period applies here. (See Def. Mem. at 24).

Plaintiff advances a number of claims of adverse employment actions to establish a prima facie case for disability discrimination. However, these claims are unavailing because they are either time-barred or because as a matter of law they do not establish the occurrence of an adverse employment action.

1. Pre-October 16, 2015 Employment Actions

Certain of plaintiff's claims of adverse employment actions are untimely.

Plaintiff filed an EEOC charge on August 11, 2016, alleging she was discriminated against from November 2014 to July 29, 2016. (See Worthy-Spiegl Decl. Ex. A). Thus, the 300-day period covered by plaintiff's EEOC charge extends back to October 16, 2015, not November 2014. Accordingly, any adverse conduct plaintiff asserts occurred prior to October 16, 2015, is barred by the statute of limitations.

Plaintiff's claim for 2015 unpaid leave is time-barred. Plaintiff took a medical leave of absence in January 2015, after she had exhausted her vacation and sick leave, and returned to work on May 4, 2015. During this time, plaintiff lost wages and had to pay for medical benefits out-of-pocket. Although plaintiff's unpaid leave might raise a material factual dispute respecting whether this could constitute an adverse employment action, any claim dating back to May 2015 is untimely. Moreover, plaintiff's claim that defendant refused to accommodate or transfer her to a different position in July 2015, while she was working in 141 Broadway, is also untimely.

### 2. Post-October 16, 2015 Employment Actions

Plaintiff's remaining claims of adverse employment action fail as a matter of law because plaintiff cannot establish there have been material "changes in the 'terms and conditions' of plaintiff's employment." See Jackson v. City Univ. of New York, 2006 WL 1751247, at *4.

First, plaintiff's claim that, despite her repeated requests, defendant failed to test the 130 Broadway building between 2014 and September 26, 2016, does not establish an adverse employment action. Furthermore, it is undisputed that defendant had 130 Broadway tested on September 26, 2016, and those results did not impact plaintiff's employment in any material respect.

Second, plaintiff's involuntary placement on paid administrative leave from April 6, 2016, to February 26, 2017, does not establish an adverse employment action. During the time

plaintiff was on administrative leave, she continued to receive full wages, and she accrued sick, personal, and vacation days. See Joseph v. Leavitt, 465 F.3d 87, 91–92 (2d Cir. 2006) (paid leave of absence pending the outcome of an investigation is not an adverse employment action), cert. denied, 549 U.S. 1282 (2007); Wagner v. County of Nassau, 2014 WL 3489747, at *7 n.4 (E.D.N.Y. July 11, 2014) ("[p]recedent suggests that forced, paid leave is not an adverse employment action for a discrimination claim"). Accordingly, plaintiff's paid leave of absence does not constitute an adverse employment action even if involuntary.

Third, the delay in plaintiff's relocation does not establish an adverse employment action. It is undisputed that plaintiff met with Ericson to discuss alternative locations for her to perform her job. However, on July 29, 2016, after the meeting, Ericson informed plaintiff she could not be moved to any one of the other four non-County buildings because they did not have Division employees. Discussions about relocating plaintiff recommenced in June 2017, and on July 3, 2017, she was relocated to an office in Port Jervis. Thus, plaintiff was relocated, and the undisputed facts show plaintiff's employment was not altered in any materially negative way during this time.

Finally, plaintiff's transfer to Port Jervis—at her request—which led to plaintiff handing over her supervisory duties to Sailer, does not establish an adverse employment action. Plaintiff retained her job and salary.

For these reasons, the undisputed record evidence shows plaintiff cannot establish a prima facie case for ADA disability discrimination because she cannot demonstrate a timely employment action that was adverse.

3. Continuing Violation Doctrine

Plaintiff argues the statute of limitations should not prove fatal to her claim for disability discrimination and instead invokes the continuing violation doctrine.

"The continuing-violation exception extends the limitations period for all claims of discriminatory acts committed under [an ongoing policy of discrimination] even if those acts, standing alone, would have been barred by the statute of limitations." Annis v. County of Westchester, 136 F.3d 239, 246 (2d Cir. 1998) (alteration in original). "[W]here the continuing violation doctrine applies, the limitations period begins to run when the defendant has 'engaged in enough activity to make out an actionable . . . claim.'" Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002)).

Here, plaintiff's contention that the continuing violation doctrine applies is unpersuasive. Plaintiff cannot establish a violation in the relevant time period; the time-barred alleged adverse employment actions are separate, discrete acts. The evidentiary record demonstrates at most a possible adverse employment action for unpaid leave from January to May 2015. However, that claim is easily distinguished from all subsequent complaints respecting plaintiff's paid administrative leave. Moreover, there is no evidence in the record that defendant's conduct was part of an ongoing policy of disability discrimination. If anything, defendant's conduct illustrates an ongoing policy of attempting to accommodate plaintiff. Accordingly, the continuing violation doctrine cannot be employed to save plaintiff's untimely claim.

For the reasons above, the Court finds plaintiff cannot establish a timely adverse employment action, and thus, as a matter of law, defendant is entitled to summary judgment on plaintiff's disability discrimination claim.

B.  Failure to Accommodate Claim

Defendant argues the undisputed facts show that it provided plaintiff reasonable accommodations, and any interim refusal to grant plaintiff's specific relocation requests was reasonable under the circumstances.

The Court agrees.

"The ADA . . . require[s] an employer to afford reasonable accommodation of an employee's known disability unless the accommodation would impose an undue hardship on the employer." Noll v. Int'l Bus. Machines Corp., 787 F.3d 89, 94 (2d Cir. 2015) (citing 42 U.S.C. § 12112(b)(5)(A)). "An employer may . . . violate the ADA by failing to provide a reasonable accommodation." McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013). A plaintiff establishes a prima facie case for failure to accommodate by demonstrating:

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

Id. at 125–26.

A "reasonable accommodation may include, inter alia, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d at 97 (citing 42 U.S.C. § 12111(9)(B)). However, "an employer need not reassign an employee if no position is vacant." Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 99 (2d Cir. 1999).

"The reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by a factfinder." Noll v. Int'l Bus. Machines Corp., 787 F.3d at 94. But when "the employer has already taken (or offered) measures to accommodate the disability, the

17

employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is plainly reasonable." Id. "In other words, the plain reasonableness of the existing accommodation ends the analysis." Id.

"If the plaintiff succeeds in establishing a prima facie case of disability discrimination, the burden shifts to the employer to demonstrate that the employee's proposed accommodation would have resulted in undue hardship." Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 (2d Cir. 2000).

First, as discussed above, the Court assumes plaintiff has established, or at least shown there is a material factual dispute concerning, a disability within the meaning of the ADA. Second, defendant had knowledge of plaintiff's proffered disability. Third, plaintiff concedes defendant has provided, or attempted to provide, accommodations for her disability, but argues defendant's refusals to provide certain requested accommodations—i.e., transfer to a non-County owned building and a delayed transfer to the Port Jervis office—were unreasonable. Fourth, although defendant maintains plaintiff was not disabled and could perform the essential functions of her job, it is undisputed that Ericson, Sailer, and Deitrich worked with plaintiff to develop reasonable accommodations that would prevent her asthma attacks.

Ultimately, plaintiff's failure to accommodate claim boils down to an argument that defendant's attempts to accommodate plaintiff were too little—i.e., denying plaintiff's relocation requests in July 2016 respecting four non-County-owned buildings—and too late—i.e., defendant's failure to provide Port Jervis as an alternative location until July 2017.

The Court is not persuaded.

The undisputed record evidence shows defendant took a multitude of steps to accommodate plaintiff beginning as early as January 2015. Specifically, plaintiff was: (i)

18

relocated to 141 Broadway with accommodations after complaining that the mold in 130 Broadway triggered her asthma; (ii) exempted from certain meetings; (iii) allowed to work in other offices besides her own; (iii) permitted to use a mask; (iv) provided an air purifier; (v) placed on paid administrative leave after her symptoms flared up in April 2016; and (vi) relocated to the Port Jervis building in 2017.

Indeed, with the Port Jervis transfer, the parties landed on a solution that worked. To effectuate the relocation, defendant moved another employee from the Port Jervis location to 130 Broadway, and had plaintiff's supervisor, Sailer, assume plaintiff's supervisory responsibilities. In doing so, defendant went above and beyond what was required by law—creating a position for plaintiff in a location where there was none, and by having another employee assume certain of plaintiff's responsibilities. Moreover, plaintiff continues to work at the Port Jervis location and she no longer suffers from asthma attacks.

For these reasons, the undisputed record shows that the accommodations provided to plaintiff were plainly reasonable. Accordingly, defendant is entitled to summary judgment on plaintiff's failure to accommodate claim.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #43) and close this case.

Dated: March 9, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge